BOUTALL, Judge.
This case arises from separation and divorce proceedings brought by a husband against his wife. The wife appeals that portion of the judgment of divorce which declares her to be at fault because of her habitual intemperance.
The plaintiff, Allan F. Holmgren, and defendant, Theresa Marie Kaigle, married in May, 1974. No children were born of the union. Mr. Holmgren moved from the family home on June 24, 1979, and then filed suit for separation on' June 28, 1979, on grounds of Mrs. Holmgren’s habitual intemperance. The wife answered and, in a re-conventional demand, alleged the husband’s cruelty by refusing to give her sufficient money for groceries, refusing to take her out in public, and physically harming her at least twice. On September 10, 1980, the husband amended his original demand to pray for a divorce on grounds of living separate and apart for more than one year.
Trial resulted in a judgment of divorce and a finding that both parties were at fault, the husband for cruel treatment and the wife for habitual intemperance, dismissing the wife’s demand for permanent alimony. Mrs. Holmgren appeals, alleging that her intemperate behavior is excused because of her mental illness; therefore, she is not at fault. The issue before this court is whether or not Mrs. Holmgren’s excessive use of alcohol and drugs constitute habitual intemperance within the meaning of Civil *978 Code article 138 and was a cause of the separation.[1]
The appellant wife argues that her abuse of alcohol and drug stems from a serious mental disorder, manic-depression. The husband, on the other hand, makes the reverse argument, i.e., that the wife’s alcohol problems bring about her depressive episodes.
The testimony of husband and wife, police reports and hospital records all reveal a marriage beset with discord which erupted at times into angry arguments at least one of which became physical. The police were called more than twelve times between May, 1977 and June, 1979. In many of the reports the reporting officer mentioned Mrs. Holmgren’s appearing intoxicated; on one occasion, the police arrested Mr. Holm-gren for hitting his wife. East Jefferson Hospital’s records indicate that she was hospitalized there for brief periods three times between November, 1977 and July, 1978. The first hospitalization was an alleged suicide attempt by an overdose of a prescription drug and vodka. During her third hospitalization a psychiatric consultation had been ordered, which she refused.
DePaul Hospital’s records indicate that she was an inpatient for the periods of September 18 to October 19, 1978,- January 29 to February 14, 1979, and June 20 to August 7, 1979. The first discharge summary listed the diagnosis as “major affective disorder, cyclic-hypomanic; alcoholism.”
Dr. Edward T. Frank, Jr. was deposed by the plaintiff and testified for the defendant. He is a psychiatrist in private practice and a consultant to DePaul Hospital’s drug and alcohol unit, the New Life Center. He was Mrs. Holmgren’s treating physician during the three hospitalizations at DePaul before the separation and for occasional out-patient care after them. Mrs. Holm-gren was hospitalized briefly in March, 1981, when Dr. Frank again treated her. In the September, 1978 period Mrs. Holm-gren’s internist had had her admitted to the New Life Center but called in Dr. Frank to see her. He recommended that she be moved from the open ward of the Center to a closed, “acute admission” ward because of her disruptive behavior and the severity of her psychiatric illness. After a period of anti-depressant medication he felt she was ready for treatment in the alcohol unit. There she received psychotherapy and continued the anti-depressant. Dr. Frank concluded during this period that she had had for years mood swings from feeling very high to feeling very low and that during the highs and lows she tended to drink. He recommended that she begin taking lithium to control the mood swings but she refused because a friend had suffered a bad reaction from the drug. When Mrs. Holmgren returned to DePaul in January, 1979, she appeared to be more agitated than before, was very irritable and irrational. She was treated with an anti-depressant, an anti-psychotic drug to decrease the highs she was evidencing, and lithium. Dr. Frank felt she had manic-depressive illness, for which lithium is helpful in stabilizing mood swings. In the third hospitalization she had discontinued taking lithium regularly and was again treated with anti-psychotic medication, lithium, and an anti-depressant. She also began taking antabuse to try to control her urge to drink. Heavy drinking was the precipitating cause for her hospitalization all three times and detoxification was part of the treatment.
Mr. Holmgren reported that the first serious drinking bout of which he was aware occurred about two months after he and his wife were married, in June, 1974. She drank for several days at a time periodically over the next few years but gradually the periods became more frequent, eventually *979 resulting in the hospitalizations reported above. Holmgren stated his wife had been depressed on occasion and always drank when depressed. As to whether she had episodes of being very “high” or “happy” and then sad or “low,” he said “... There was numerous occasions she was real high, and of course when she started to sober up, have some low periods and what not, after two or three days of drinking.” The plaintiff apparently saw the mood swings as a result of alcoholism not as its cause.
In his deposition and in his testimony Dr. Frank stated that emotional problems cause the alcohol problem in about 30% of the alcohol population. Further, that people with manic-depressive illnesses frequently use alcohol “as a tranquilizer, to calm their moods.” In the case of Mrs. Holmgren, she drank whenever she became nervous, tense, depressed, or agitated. “... whenever she would have a manic phase or a depressive phase, she would tend to drink more in an effort to make herself feel better.” Dr. Frank agreed with the plaintiff that alcohol is a depressant and can cause depression. When asked whether Mrs. Holmgren’s alcoholic problems brought about her depressive state or vice versa, Dr. Frank said, “That’s true, I don’t know the question, I can’t say-”
Under Civil Code article 141, a finding of mutual fault of both spouses in causing the separation precludes an award of post-divorce alimony to either spouse.
The Supreme Court most recently considered the issue of fault sufficient to bar alimony in Adams v. Adams, 389 So.2d 381 (La.1980) and in Pearce v. Pearce, 348 So.2d 75 (La.1977). A succinct summary of the law relating to “fault” in article 141, appears in Adams at 382:
“... The appellate courts of this state have correctly interpreted the word ‘fault’ to mean conduct constituting an independent fault ground for separation under C.C. art. 138. Dixon v. Dixon [357 So.2d 856 (La.App., 4th Cir.1978) ], supra; Saucier v. Saucier, 357 So.2d 1378 (La.App., 4th Cir.1978); Brocato v. Brocato, 369 So.2d 1083 (La.App. 1st Cir.1979), writ denied, 371 So.2d 1341 (La.1979); Watson v. Watson [372 So.2d 639 (La.App., 4th Cir.1978) ], supra.
“Civil Code art. 160, dealing with alimony after a final divorce, requires freedom from fault on the part of the claimant spouse as one prerequisite to an award of alimony. In interpreting this requirement, this Court stated in Pearce v. Pearce, 348 So.2d 75, 77 La. (1977):
‘We have held that, under this statute respecting an award of alimony to a wife without “fault”, the word “fault” contemplates conduct or substantial acts of commission or omission by the wife violative of her marital duties and responsibilities. A wife is not deprived of alimony after divorce simply because she was not totally blameless in the marital discord. Vicknair v. Vicknair, 237 La. 1032,112 So.2d 702 (1959); Davieson v. Trapp, 223 La. 776, 66 So.2d 804 (1953); Breffeilh v. Breffeilh, 221 La. 843, 60 So.2d 457 (1952); Adler v. Adler, 239 So.2d 494 (La.App. 4th Cir.1970). To constitute fault, a wife’s misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958).’
“Although not • specifically mentioned C.C. art. 138 (l)-(8), or C.C. art. 139 by name, this language clearly indicates that only such conduct as will entitle one spouse to a separation or divorce under these articles is sufficient to deprive the other spouse of alimony after a final divorce. ...”
We conclude that the testimony and exhibits introduced into evidence support the trial judge’s finding of habitual intemperance on the part of Mrs. Holmgren. In Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir.1978, on Rehearings February 8,1979 and July 27,1979) the court said at 682:
“... It is not the quantity of alcohol but rather the extent and habitualness of intoxication that constitute ‘habitual in *980 temperance’ within La.C.C. 138 and therefore ‘fault’ within C.C. 160 which would defeat a wife’s entitlement to alimony. ...”
Although Mrs. Holmgren’s drinking was not a daily occurrence in the last two years of the marriage, it rather frequently was severe enough to require periodic detoxification treatment, and fulfills the definition of “habitual intemperance.” As the visits by the police and the hospitalizations were disruptive of the marital relationship, the intemperance was an independent cause of the separation. Great weight in domestic matters is placed on the findings of the trial judge, who is in a position to weigh the credibility of live witnesses, and his judgment on the issue of fault will not be disturbed unless manifestly erroneous. Pearce v. Pearce, above citing Williams v. Williams, 215 La. 839, 41 So.2d 736 (1949); Fletcher v. Fletcher, 212 La. 971, 34 So.2d 43 (1948); Trosclair v. Trosclair, 337 So.2d 1216 (La.App. 1st Cir.1976). We see no reason to disturb the judgment in this case.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. LSA-C.C. art. 138 in pertinent part provides:
“Separation from bed and board may be claimed reciprocally for the following causes:
[[Image here]]
3. On account of habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them toward the other, if such habitual imtemperance, or such ill-treatment is of such a nature as to render their living together insupportable;