490 So.2d 361 (1986)
Peggy B. BLANCHARD
v.
Robert R. BLANCHARD.
No. 85 CA 0227.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied July 15, 1986.
*362 Alan S. Fishbein, Baton Rouge, for plaintiff-appellee Peggy B. Blanchard.
Clinton Hyatt, Jr., Baton Rouge, for defendant-appellant Robert R. Blanchard.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
This is an appeal from a judgment of separation from bed and board.

FACTS
Plaintiff, Peggy B. Blanchard, and defendant, Robert R. Blanchard, were married on June 11, 1960, in Port Allen, Louisiana. They established their domicile in West Baton Rouge Parish where they resided until plaintiff moved to East Baton Rouge Parish on April 28, 1984. Of their marriage, two children were born, namely Marcy Blanchard and Bradley Blanchard, both of whom are now majors.
On May 2, 1984, plaintiff filed suit seeking a separation from bed and board on the grounds of mental cruelty under LSA-C.C. art. 138(3). In response to defendant's exception pleading vagueness, plaintiff amended her petition to allege specific acts of mental cruelty and specifically that defendant was guilty of habitual intemperance, that defendant has refused and failed to get assistance for this condition, and that defendant has refused to communicate with plaintiff. Defendant reconvened seeking a separation based on abandonment, mental cruelty and defamation.
After trial on the merits, the trial judge, without assigning reasons, granted a judgment of separation in favor of plaintiff and dismissed defendant's reconventional demands. From this judgment, defendant appeals asserting the following assignments of error:
1. Plaintiff failed to establish habitual intemperance on the part of Mr. Blanchard;
2. The trial court committed error by denying Mr. Blanchard's motion for a directed verdict at the close of plaintiff's case inasmuch as there was a total absence of habitual intemperance as defined by the law;

*363 3. The trial court was manifestly erroneous in not finding Peggy B. Blanchard guilty of abandonment;
4. The trial court was manifestly erroneous in not finding Peggy B. Blanchard guilty of mental cruelty towards Robert R. Blanchard;
5. The trial court was manifestly erroneous in not finding Peggy B. Blanchard guilty of defamation against Robert R. Blanchard; and,
6. The trial court should have found mutual fault in this case.

ASSIGNMENTS OF ERROR NOS. 1 & 2
By these assignments of error, defendant contends that the trial court erred in finding that he was guilty of habitual intemperance.
It is well established that cruel treatment, in any form, is proper grounds for a separation from bed and board provided the cruelty is of such a nature as to render living together insupportable. LSA-C.C. art. 138(3); Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980). Furthermore, the courts have consistently held that habitual intemperance can constitute mental cruelty. Langton v. Langton, 442 So.2d 1308 (La.App. 3rd Cir.1983); Holmgren v. Holmgren, 425 So.2d 977 (La.App. 5th Cir.1983). However, it is equally well established that the party seeking a separation bears the burden of proving by a preponderance of the evidence the facts to support his demand. Edelen v. Edelen, 457 So.2d 171 (La.App. 2nd Cir.1984); Richard v. Richard, 340 So.2d 1104 (La.App. 3rd Cir.1976).
In the case sub judice, plaintiff alleged fault on the part of defendant by his habitual intemperance. Habitual intemperance is defined as follows:
[T]hat degree of intemperance from the use of intoxicating liquor which disqualifies the person a great portion of the time from properly attending to business, or which would reasonably inflict a course of great mental anguish upon the innocent party. Habitual or excessive use of liquor.
Black's Law Dictionary 727 (Rev. 5th ed. 1979).
It is not the quantity of alcohol, but rather the extent and habitualness of intoxication, which makes living together insupportable, that constitutes habitual intemperance within LSA-C.C. art. 138. Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir.1978); Abry v. Abry, 249 So.2d 215 (La.App. 4th Cir.1971). Furthermore, it is well established that habitual intemperance is not established by proof of intoxication on two or three occasions. Creech v. Creech, 449 So.2d 1192 (La.App. 2nd Cir. 1984). Thus, in order for plaintiff to meet her burden of proof, she must establish by a preponderance of evidence defendant's frequent or habitual drunkenness, rather than his frequent or habitual drinking.
Testimony at trial established that defendant worked full time as a research scientist at Dow Chemical, as well as operated a business known as Louisiana Tool and Dye. His daily routine consisted of leaving for work at Dow at about 7:30 a.m. and working in his shop, which was located behind his home, upon his return in the evening between 4:30 p.m. and 6:30 p.m.
Plaintiff testified that defendant habitually drank beer, consuming at least six cans every weeknight and twelve to twenty-four cans per day on weekends. She further testified that defendant drinks the beer while working in his tool and dye shop at night and on weekends. Plaintiff's testimony was corroborated by the testimony of the children who substantiated the quantity of beer defendant allegedly drank. However, on cross examination, all three of these witnesses admitted that they did not actually see defendant drink the quantities alleged, but rather only presumed that fact. The basis of their presumption was that after defendant returned from Dow in the evening, they would see him bring a six-pack into the shop with him. None of these witnesses could testify as to who consumed the beer because they rarely, if ever, went into the shop. While Bradley *364 testified that he occasionally worked in the shop on weekends, he admitted that his father worked in the office area that was out of his view. Marcy testified that she occasionally saw her father carry a paper bag with him into the shop. Although she could not see the contents, she presumed it was beer since he often had one in his hand. However, Marcy further testified that she was often gone on weekends, and when she was home, she did not often see her father.
Additionally, plaintiff and the children all testified that when defendant would drink, he would become silent and withdrawn and was hard to communicate with, but that he never became abusive or violent. On cross examination, however, both children testified that defendant was quiet and somewhat withdrawn even when he was not drinking, and that in fact every member of the family was somewhat quiet.
On the other hand, defendant admitted that he enjoys beer frequently, but insisted that he engages in only moderate consumption. In support of his claim, defendant offered the testimony of his co-workers. This testimony established that while defendant did bring beer to the shop on occasion, he would not drink the six-pack alone. Rather, the other workers would take beer from the six-pack, and that generally defendant never had more than "a couple of beers."
Additionally, defendant offered the testimony of Dr. Richard Moore, who was accepted as an expert by the court. Dr. Moore testified that he ran a series of tests on defendant and that defendant did not exhibit symptoms of an alcoholic. Furthermore, Dr. Moore testified that if defendant did drink as much as was alleged by plaintiff, it would have shown up in the test results.
Finally, defendant offered the expert testimony of Dr. James Brabham, a clinical psychologist defendant saw at plaintiff's insistence. Dr. Brabham testified that defendant showed no signs of alcohol or substance abuse, that he saw no reason to treat defendant, and that the tests he conducted showed no signs of excessive consumption. He further testified that had defendant drank to the extent claimed by plaintiff, the tests he conducted would have revealed it.
The record, taken as a whole, clearly establishes that defendant enjoyed and frequently drank beer. Plaintiff clearly established defendant's frequent drinking, but not frequent drunkenness, which is a pre-requisite to a finding of habitual intemperance. Abry v. Abry, supra. What is fatally absent from plaintiff's case is any evidence that defendant was habitually or even occasionally drunk. The only testimony as to drunkenness was offered by defendant's son who testified that he had seen defendant drunk on one occasion, that being at a supper at a duck camp. Therefore, we find that the trial judge erred in granting plaintiff a separation on the grounds of habitual intemperance.
However, we find that there is evidence to establish that defendant committed other acts of mental cruelty so as to entitle plaintiff to a separation under LSA-C.C. art. 138(3).
The defendant's wife vehemently disapproved of his alcohol consumption as evidenced by her pleas and her constant efforts over a several year period to encourage him to stop drinking. Despite his knowledge of her feelings, defendant continued to drink on a daily basis and, in fact, conducted what he called an "experiment." Defendant would fill empty beer bottles with lemonade or a lightly-colored soft drink, place the caps on them, take them home and drink them in front of his wife allegedly to see whether she was upset with the effects of his consumption or the act of drinking. Furthermore, defendant admitted to installing listening and tape recording devices throughout his home. By using these devices to record various conversations of family members, defendant was well aware of the effects his drinking had on the family as a whole. The above acts, coupled with defendant's lack of communication clearly establish mental cruelty necessary to support the granting *365 of a judgment of separation in favor of plaintiff under LSA-C.C. art. 138(3).

ASSIGNMENTS OF ERROR NOS. 3, 4, 5 & 6
These assignments address the trial court's disposition of defendant's reconventional demands.
Defendant first claims that plaintiff should be found guilty of abandonment. The abandonment claim, as a reconventional demand, must be proved by the party asserting it. Dugas v. Dugas, 424 So.2d 1189 (La.App. 1st Cir.1982). The requirements for proof of abandonment are set forth in LSA-C.C. art. 143, namely, 1) that the party has withdrawn from the common dwelling, 2) that the party has left without lawful cause, and 3) that the party has constantly refused to return to live with the other. See Dugas v. Dugas, supra.
"Lawful cause" consists of any reasons which in themselves would be sufficient grounds for a legal separation. Finch v. Finch, 479 So.2d 473 (La.App. 1st Cir.1985). In other words, a party is not justified in leaving the matrimonial domicile unless that party has reasons which would amount to grounds for a separation under LSA-C.C. art. 138. Dugas v. Dugas, supra.
It is undisputed that plaintiff withdrew from the matrimonial domicile on April 28, 1984. However, having found defendant guilty of mental cruelty, which is lawful cause for separation under LSA-C.C. art. 138(3), we conclude plaintiff was justified in withdrawing from the matrimonial domicile. Quinn v. Quinn, 412 So.2d 649 (La.App. 2nd Cir.1982), writs denied, 415 So.2d 941, 945 (La.1982); Langton v. Langton, supra.
As to defendant's allegations of defamation and mental cruelty on the part of plaintiff, we find no error on the part of the trial court since these claims are unsupported by the record. We likewise find no error in the trial court's refusal to grant a separation based on mutual fault, since there is no evidence tending to show any fault on the part of Mrs. Blanchard.

CONCLUSION
For the foregoing reasons, the judgment of the trial court decreeing a separation from bed and board on the grounds of defendant's mental cruelty under LSA-C.C. art. 138(3) is affirmed. All costs of these proceedings are to be paid by defendant, Robert R. Blanchard.
AFFIRMED.