475 So.2d 43 (1985)
Opal Cherry Hubbard RHINEHART, Plaintiff-Appellee,
v.
Earl James RHINEHART, Defendant-Appellant.
No. 17071-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*45 Sam N. Gregorio and Jim McDougle, Shreveport, for defendant-appellant.
Sockrider, Bolin & Anglin by H.F. Sockrider, Jr., Shreveport, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this action to terminate or reduce permanent alimony, the former husband appeals, seeking to terminate or to further reduce the original award of $550 per month which the trial court reduced to $400.
The original award, made in 1981 and consented to by Mr. Rhinehart, was $550 per month. Since that time his earnings have decreased about 40 percent and Mrs. Rhinehart's financial circumstances have slightly improved.
We find that the trial court acted within its broad discretion in declining to terminate permanent alimony, notwithstanding Mrs. Rhinehart's apparent absence of need in the practical sense. The trial court was correct in reducing the permanent alimony solely on the basis of the change in Mr. Rhinehart's circumstances. We agree, however, that the amount of reduction should be more commensurate with his change of circumstances and exclusive of Mrs. Rhinehart's need which was judicially admitted by Mr. Rhinehart's consent in 1981 and which he cannot now contest in the absence of a change in her circumstances.
Accordingly, we amend to further reduce and affirm the judgment as amended.

FACTS
Mr. Rhinehart sells x-ray equipment to hospitals and other users. Because most of his earnings derive from commissions, his annual earnings have fluctuated since his separation from Mrs. Rhinehart in 1979.
When the original award was made, Mr. Rhinehart's income had peaked. In that decree, which also made a Texas divorce judgment executory in Louisiana, Mr. Rhinehart effectively ratified a prior understanding or agreement between the parties, and, without adversary proceedings, consented to pay $550 per month permanent alimony.
Mr. Rhinehart instituted this rule in June 1984, alleging that Mrs. Rhinehart is "not in need" because her income and assets provide sufficient means for her support and that his earnings have been reduced by 40 percent since the original award.
Permanent alimony must be terminated when it becomes unnecessary to the obligee spouse. CC Art. 160. Using the factors set forth in Art. 160, the court measures changes in the needs of the obligee spouse and changes in the ability of the obligor spouse to pay. The obligor spouse is entitled to full revocation of permanent alimony only when he or she is able to show that, considering the totality of circumstances, the obligee spouse is no longer in need. Gray v. Gray, 451 So.2d 579 (La.App.2d Cir.1984); Rains v. Rains, 376 So.2d 1298 (La.App.2d Cir.1979).
The party seeking modification or termination of the award has the burden of proving a change in the respective financial circumstances of the parties since the award, whether judgment derives from consent or from an adversary proceeding. Creech v. Creech, 449 So.2d 1192 (La. *46 App.2d Cir.1984); Mancuso v. Mancuso, 352 So.2d 359 (La.App.4th Cir.1977).
This comparative analysis admits of an important exception found in the oft-cited Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973), which limits a court's consideration of obligee spouse's need when the original need was consented to by the obligor spouse. Commenting on Art. 160's requirement that a spouse seeking permanent alimony prove his or her freedom from fault and insufficient means for support, our supreme court has said:
Relator's consent to the payment of alimony is of consequence only to the extent that such consent is tantamount to a judicial admission on his part of his wife's right to receive alimony, i.e., her freedom from fault and her necessitous circumstances. Having acknowledged judicially his wife's right to receive alimony, relator will not now be heard to complain that proof of an element requisite to the granting of alimony was not made.

It was incumbent upon relator to prove a change in respondent's circumstances or his own, from the time of the divorce decree to the time of the rule to an extent that ... alimony reduction was warranted.
283 So.2d at 229. Emphasis supplied.
Bernhardt expressly overruled Moore v. Moore, 256 So.2d 782 (La.App.4th Cir.1972), which held that an obligor spouse need not show changed circumstances when the original award was by consent because a consent judgment should not be considered an award "previously fixed and determined by the court."
Bernhardt does not absolutely bar reconsideration of an obligee spouse's need and has no effect on the general rule that any proven change in the financial position of either spouse may be considered in a rule to modify or terminate a permanent alimony award. Necessitous circumstances is a "continuing requirement" for entitlement to alimony and the court will favorably consider any change in the position of the obligee spouse toward the obligor spouse's request for modification or termination. Ducote v. Ducote, 339 So.2d 835 (La.1976); Myers v. Myers, 334 So.2d 451 (La.App. 2d Cir.1977).
We do not believe, however, that proof of a change in the obligor spouse's position permits unbridled examination of the obligee spouse's need when that need, although perhaps originally absent in a practical sense, has been judicially confessed in a consent judgment. By arguing that Bernhardt permits modification upon a showing of a change in the position of either spouse, Mr. Rhinehart simply restates the general rule: no alimony award, whether derived by consent or by contest, can be modified absent proof of change.
The distinguishing feature of a consent award is that the obligor spouse judicially confesses that the position of the obligee spouse at the time of the award constitutes need under facts then existing. When the position of the obligee wife remains essentially unchanged since the award, the obligor husband cannot dissolve the adjudicatory effects of his consent and solely rely on her large amount of assets and income to support an allegation that she is "no longer in need." Willis v. Willis, 355 So.2d 999 (La.App. 4th Cir.1978), writ denied. He cannot be heard to say that the award should be terminated simply because "she was never in need in the first place."
The "consent" given in Willis was by default judgment and was arguably less considered and deliberate than Mr. Rhinehart's. Mr. Rhinehart's agreement to pay $550 per month was obviously based on his own assessment, at a time when his income was high, of his former wife's needs and of his ability to pay.
Mr. Rhinehart's consent to his former wife's need is remotely analogous to a thing adjudged. Modification of the award can be later made only by rule upon a showing of changed circumstances. Like a trial judge, the consenting spouse cannot change an award merely "because he originally *47 set it too high or too low." McNeill v. McNeill, 223 So.2d 709 (La.App. 4th Cir. 1969); Jones v. Jones, 248 So.2d 842 (La. App.2d Cir.1971). See also Halpern v. Halpern, 442 So.2d 800 (La.App. 4th Cir. 1983).
We recognize that some authorities opine that Bernhardt should not be read to characterize consent to an alimony award as a judicial admission. See then Judge Lemmons' concurrence and the dissents of Judges Gullota and Schott in Willis, supra. However, we believe that under our rules the trial judge has "discretion to reconsider alimony awards previously set by consent, if the motion makes out a case for reconsideration." 355 So.2d at 1002, emphasis supplied.
The trial judge has discretion to decide whether the obligor spouse has shown a change in the obligee spouse's situation in life sufficient to allow reconsideration of her means of support. When change in her means is shown, whether an improvement or a deterioration, her financial situation, as earlier "confessed," no longer is akin to a thing adjudged and her entire present financial situation is open to consideration in the rule. Mr. Rhinehart's initial "confession" of Mrs. Rhinehart's need should not forever bind or estop him.
A reviewing court must give great deference to a trial court's determination of whether the obligor spouse has shown a change of circumstances sufficient to modify or terminate an alimony award. Hamiter v. Hamiter, 419 So.2d 517 (La.App. 2d Cir.1982); Daigle v. Daigle, 339 So.2d 1266 (La.App. 1st Cir.1976).
The record shows that Mrs. Rhinehart's net monthly salary increased from $755 in 1981 to $932 in 1984, but her annual gross earnings from investments fell from $7,400 in 1981 to $5,595 in 1983. Her 1984 earnings are not in the record. The value of her tangible assets, including her home, furnishings, jewelry, and antiques, increased only slightly from $139,289 in 1981 to $140,841 in 1984. Her investment securities similarly showed a slight increase from $25,639 in 1981 to $27,309 in 1984.
Although her position has improved slightly since 1981, the record supports the trial court's finding that her situation has "remained relatively stable since 1981." Increases in income and asset value are apparently attributable to seniority raises and inflation. These factors affect both spouses and need not be considered as changes in circumstances for alimony purposes. Ducote, supra.
We find then that the trial court correctly refused to consider the wife's [relatively unchanged] financial status in this recent comparison of the parties' positions. Mr. Rhinehart's reduced income, which is the basis of the trial court's judgment, is a change in his circumstances that may warrant termination or modification of the award, depending on the degree of the change. As long as Mr. Rhinehart has the ability to pay, however, a change in his income, as we have tried to explain, may not be used to assert that Mrs. Rhinehart is "no longer in need."
The purpose of permanent alimony is to provide a spouse in need, whether by consent or by finding, with sufficient means for support. That spouse in need is entitled to "expenses for food, clothing, and shelter, as well as reasonable and necessary transportation or automobile expenses, utilities, household expenses, and the income tax liability generated by the alimony payments." Bernhardt, supra; Arabie v. Arabie, 447 So.2d 22 (La.App. 1st Cir.1984).
Mr. Rhinehart's consent to permanent alimony, although somewhat gratuitous, obligates him to pay her some amount as long as he is able, until he shows a change in Mrs. Rhinehart's circumstances that abates the original "need." Until this showing is made, the amount of the monthly payments should depend on his ability to pay because, but for his consent to pay, Mrs. Rhinehart is apparently and practically not in need. Nonetheless, Mr. Rhinehart is entitled to a *48 reduction in his alimony obligation commensurate with the reduction in his ability to pay.
Mr. Rhinehart's gross earnings have steadily declined from $88,707 in 1981 to a low of $51,982 in 1983. He projected "annualized" gross earnings of $53,466 for 1984. His average net monthly earnings have declined from $5,699 in 1981 to a projected average of $3,389 for 1984. His average current monthly expenses, excluding alimony, were conservatively estimated by his affidavit at $2,512.
On these figures, the trial court found that Mr. Rhinehart's ability to pay had declined by 40 percent since 1981, but reduced monthly payments by only about 28 percent to $400. We amend the judgment to further reduce Mr. Rhinehart's monthly alimony payments to $330, an amount we consider more commensurate with the reduction in his ability to pay, but still a reasonable and not nominal amount.
AMENDED, and as amended, AFFIRMED.