CHEHARDY, Chief Judge.
We granted a writ in this matter to review the district court’s denial of a motion to reduce or terminate alimony. The relator, Michael F. Hornung, has been paying alimony to his former wife, Marguerite Hornung, since 1978. Until 1986 the alimony remained set at $400 per month, despite several attempts by Mr. Hornung to reduce or terminate it. In January 1986, however, the alimony was reduced to $296.11 per month as a result of Mr. Hornung's loss of employment.
In May 1986 Mr. Hornung filed another rule to reduce or terminate alimony, alleging he remained unemployed despite numerous applications for employment, that his unemployment compensation benefits had terminated and that he was without income; therefore, he could not pay alimony. Judgment was rendered on August 6, 1986, dismissing his rule to reduce alimony.
Mr. Hornung sought writs, asserting he would suffer irreparable harm if forced to wait for normal appeal delays because he would be placed in jeopardy of imprisonment for contempt for nonpayment of alimony. On the showing made, the district court’s refusal to terminate the alimony seemed questionable. Accordingly, we granted writs.
As Mr. Hornung points out, LSA-C.C. art. 160 provides that alimony after divorce shall not exceed one-third of the payor spouse’s income. Mr. Hornung states his-unemployment benefits have expired, he has been unable to find new employment and he has no income; therefore, he cannot be liable for alimony. Although he has remarried since his divorce from Marguerite Hornung, he asserts his second wife’s income and assets cannot be considered for alimony purposes because he and his present wife are separate in property by virtue of a marital agreement.
Mr. Hornung had been employed as a computer programmer by Hornung & Associates, Inc., whose president and owner was Sheila Hornung, Mr. Hornung’s present wife. In October 1985, his job was terminated for “lack of work.” He began receiving unemployment compensation benefits of $205 per week. He filed a rule to reduce the alimony payments to Marguerite Hornung.
In January 1986, judgment was rendered reducing the alimony payments to $296.11, exactly one-third of his total monthly unemployment compensation benefits. On May 10, 1986 Mr. Hornung’s unemployment benefits were discontinued because he had received the maximum allowed. He still had not found work. He promptly applied to terminate the alimony.
Mr. Hornung’s present wife, Sheila, is now unemployed because the company has gone out of business. She has sold their home, which was her separate property, *782 and’they are living with her mother. He said he borrows money from other relatives to pay expenses such as car notes and gasoline. He stated he has sent out over 1,500 resumes, all over the country, without any positive responses, and he has not refused any employment.
He testified on cross examination that he has a bachelor’s degree in economics and a master’s degree in marketing and that his average salary over the three years preceding his loss of employment was $22,000. There are two automobiles in his family, one for his use and one for his wife; the value of his car is about $5,000. He plans to help pay for his son’s college education this fall if possible, but right now he has no money available. His present wife received about $8,000 profit from the sale of her house. He said they have been using this money to live on.
Mr. Hornung said he has sought employment as a financial analyst, computer programmer, materials manager, inventory controls, anything he could think of that might “fit into [his] criteria.” The lowest level of employment for which he has applied is a programmer; he estimated the salary for such a position at $12,000 to $18,000. He has not sought any employment at a lower income level than that.
He testified he was borrowing money from his mother ($100 to $200 a month), occasionally from his brother-in-law and between $100 to $200 a month from his mother-in-law. He said his wife had been paying his bills out of her savings account, of which she had at the time , perhaps $1,000 left.
Marguerite Hornung testified she has no income other than the alimony payments from Mr. Hornung. She receives $62 worth of food stamps monthly, receives occasional free meals and transportation from a charitable organization, and lives (apparently rent-free) in a home owned by members of her family. She does not own an automobile but uses one provided by her parents. She states she cannot seek employment because she has a heart condition.
In 1978, when the original alimony judgment was rendered, Mrs. Hornung had custody of the four children of the marriage. None of her children still live with her; three of them are now above the age of majority and the fourth, the son, will be 18 in November 1986. He is in the custody of his father, with whom he resides.
The minor son testified he lives with his father, uses his father’s car and is provided with spending money by his stepmother. At the time of this hearing, he had graduated from high school the preceding May and was enrolled in college for the upcoming fall semester. He also testified he had gone to Colorado on a camping vacation with' his father about four months before the hearing. Mr. Hornung testified this trip was a reward to celebrate his son’s high school graduation and his winning a music scholarship.
Mr. Hornung has made several prior attempts to reduce or terminate the alimony to Mrs. Hornung. While her children were minors and in her custody, she claimed the right not to work outside the home, so she could care for the children. Although she no longer has any of them living with her, she has asserted in earlier proceedings that she has a heart condition that precludes her from working.
Mr. Hornung argues that his former wife should be required to find a job; however, his attempts to elicit testimony regarding her capability or capacity to work were excluded by the trial judge as irrelevant under the pleadings. He also complains that the burden of proof has been improperly shifted to him to establish his former wife’s inability to work.
On October 7, 1982, the district court ruled, in oral reasons for judgment, that “Mrs. Hornung’s condition is such that she cannot work.” Because this prior ruling is the law of the case, it is now Mr. Hornung’s burden to show a change in her circumstances that would make her able to work. See Rhinehart v. Rhinehart, 475 So.2d 43 (La.App. 2 Cir.1985). Therefore, it is up to him to present medical evidence *783 that she is physically capable of holding employment.
As for Mr. Hornung’s contention that his inability to find employment and lack of income preclude his paying alimony, we find no clear abuse of discretion in the trial judge’s conclusion. The evidence in the record establishes circumstances the trial judge may have found suspicious.
The trial judge may have felt that Mr. Hornung deliberately has used every means in his power to hide his income or to appear indigent, considering in this light such circumstances as his marital agreement for separation of property from his current wife and the fact that Sheila Hor-nung was the owner and officer of the company for which they worked, although only a few years earlier Mr. Hornung had previously been self-employed in the same capacity and although he has educational credentials she does not have.
Further, we infer from the record that most of their property seems to have been in Sheila Hornung’s name. We note that for years Mr. Hornung has made vigorous efforts to escape paying alimony and has been held in contempt in more than one prior proceeding. A bone of contention between the parties at previous hearings was often whether Mr. Hornung was hiding income from his self-employment.
Despite Mr. Hornung’s evidence that he has not received any job offers in the fields in which he has applied, he has not shown that he is unable to work or incapable of being employed. See Sykes v. Sykes, 308 So.2d 816 (La.App. 4 Cir.1975). If he cannot find a position in his former field, he should seek employment at a lesser salary. A payor spouse cannot escape liability for alimony by refusing to work. Ward v. Ward, 339 So.2d 839 (La.1976).
In evaluating alimony needs, the court must examine the totality of the circumstances indicative of both parties’ financial condition. Gray v. Gray, 451 So.2d 579 (La.App. 2 Cir.1984), writ denied 457 So.2d 13 (1984). A trial court’s evaluation of the evidence in a proceeding to reduce or terminate permanent alimony, if supported by the record, will not be disturbed on appeal absent a determination that the trial court evaluation is clearly wrong. Gray v. Gray, supra.
For the foregoing reasons, therefore, the judgment of the district court is affirmed.
AFFIRMED.