577 So.2d 1140 (1991)
Susan C. Boudreaux CARROLL
v.
Joseph Michael CARROLL.
No. CA 90 1658.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
*1142 Darrell J. Saltamachia, Baton Rouge, for plaintiff-appellee Susan C. Boudreaux Carroll.
Tracy Pickerell, Baton Rouge, for defendant-appellant Joseph Michael Carroll.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
Plaintiff, Susan C. Boudreaux Carroll, filed this suit against her husband, Joseph M. Carroll, seeking a separation, alleging cruel treatment by her husband as grounds for the separation. Plaintiff also sought sole custody of the minor child born of the marriage, Andrew Corey Carroll; child support and alimony pendente lite. Defendant filed a reconventional demand seeking a separation based on plaintiff's abandonment, custody of the child, child support and alimony pendente lite.
The trial court rendered judgment in favor of Susan Boudreaux Carroll and against Joseph M. Carroll, awarding unto the former a separation "a mensa et thoro". The trial court further awarded sole care, custody and control of Andrew to plaintiff. Defendant was also ordered to pay the sum of $200.00 per month as alimony pendente lite and the sum of $250.00 per month as child support. Defendant was further ordered to maintain medical insurance on the minor child and on his wife.
Defendant appeals the trial court's judgment raising four assignments of error:
(1) The trial court erred in granting a separation in favor of Susan Carroll.
(2) The trial court erred in awarding sole care, custody and control of the minor child, Andrew Cory Carroll, to Susan Carroll.
(3) The trial court erred in awarding $250.00 per month child support.
(4) The trial court erred in awarding $200.00 per month alimony pendente lite.

SEPARATION
Joseph M. Carroll (also referred to as Mike) and Susan C. Boudreaux were married on July 30, 1988. The couple argued frequently. They both testified regarding the events of an argument that occurred on approximately August 17, 1988.
Susan testified that she did not remember what the fight was about. Susan described that she was walking in the apartment and Mike followed her and kept pushing her and cursing at her. She also stated that he destroyed some of their furniture by throwing it up against the wall or beating it on the floor. According to Susan, Mike left the apartment for about two hours and returned with $118.00 worth of liquor and a gun. Susan said he would not let her leave the apartment. At this point, Mike threatened he would kill himself if Susan left. Later, he threatened to kill Susan. Eventually, Susan talked Mike into letting her leave the apartment. She went to her parents' house and remained there for three or four days. She and Mike reconciled and she returned home, finding out shortly thereafter that she was pregnant.
Mike testified that this particular argument began while he and his wife were at her mother's house. Later that day, he and Susan returned home and the fight continued. He testified that he did not strike Susan. He stated that he did leave the residence to purchase liquor and a gun. He explained that he had sold a gun in order to purchase a wedding ring for Susan *1143 and he purchased the gun as a replacement. Mike denied threatening to kill himself or Susan.
Susan also described an incident that occurred when she was eight months pregnant. She explained that she was trying to help Mike get dressed and groomed for a military drill. She stated that he found fault with everything she did and was continually cursing at her.
Susan gave birth to a son, Andrew, on May 30, 1989. Susan stated that after Andrew was born, the relationship between her and Mike became worse. Susan described the fight that prompted her to leave the matrimonial domicile. Susan explained that she had begun to work parttime at the pawn shop where her husband was employed. She said the fight was about her working and taking Andrew with her to work. She described that Mike beat on the walls and kicked the furniture. According to Susan, when she threatened to leave, Mike violently grabbed her hair and tried to get Andrew out of her arms. She stated that he also squeezed her neck until she let go of the baby. Mike wanted Susan to leave but when she tried to leave, Mike would not let her take the baby. Susan refused to leave without the baby. Susan explained that she wanted to leave the apartment at that time with Andrew but was fearful for her safety due to the fact that Mike kept many guns in the apartment. However, she explained that, at this point, she was determined to leave with Andrew when she could do so safely. Approximately seven to ten days after this fight, Susan packed some of her and Andrew's belongings and left the matrimonial domicile. She returned to her parents' house.
Mike confirmed that he and Susan did have a fight regarding Susan's work at the pawn shop, approximately two weeks before Susan left. However, Mike denied losing his temper during this argument. He testified that he did not grab Susan's hair and he did not strangle her.
Bobbie Boudreaux, plaintiff's mother, testified regarding her knowledge about the fights that occurred between Susan and Mike. She testified that they fought a lot and that she had witnessed displays of temper by Mike. More specifically, Ms. Boudreaux explained that her daughter came to her house one day and was very upset. Susan told her mother that she and Mike had a fight, Mike had left the apartment, bought some liquor and a gun and returned, threatening to shoot both Susan and himself. According to Ms. Boudreaux, Susan left her apartment, drove to her mother's home and stayed for four days. At that time, her daughter reconciled with Mike.[1]
At the time of the filing of plaintiff's suit for separation, La.C.C. art. 138 set forth the grounds for a separation from bed and board and provided, in pertinent part, as follows:
Separation from bed and board may be claimed reciprocally for the following causes:
. . . . .
3. On account of habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them toward the other, if such habitual intemperance, or such *1144 ill-treatment is of such a nature as to render their living together insupportable;
The party seeking a separation bears the burden of proving by a preponderance of the evidence the facts in support of his demand. Edelen v. Edelen, 457 So.2d 171 (La.App. 2d Cir.1984). Fault is a question of fact. The trial court's finding on the issue will not be disturbed on appeal absent a finding of manifest error. Nungesser v. Nungesser, 558 So.2d 695 (La. App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990). In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. Pearce v. Pearce, 348 So.2d 75 (La. 1977).
In Jarman v. Jarman, 540 So.2d 444 (La.App. 1st Cir.1989), this court addressed cruel treatment as follows:
A finding of cruelty requires a dual analysis of the facts. First, the judge must decide whether or not the objective factual conduct, which is alleged to be cruel, actually occurred. Second, if the trial judge finds that the conduct in fact occurred, he must make a further, largely subjective, determination as to whether or not that conduct rendered the parties' living together insupportable under the terms of article 138(3). 540 So.2d at 447
Furthermore, the mere uncorroborated testimony of one spouse, whether denied or admitted by the other, does not constitute a preponderance of the evidence sufficient to support a judgment of separation or divorce. Yamayans v. Yamayans, 490 So.2d 371 (La.App. 1st Cir.1986).
In the present case, the trial judge determined that plaintiff was entitled to a separation based on defendant's cruel treatment. We find no manifest error in this determination.
Appellee alleges that the cruel treatment which prompted her to leave the matrimonial domicile occurred approximately at the end of July, 1989. She described that Mike beat on the walls and kicked the furniture, pulled her hair and squeezed her neck until she let go of the baby, whom she held in her arms.
Susan and her mother also testified regarding a previous incident in which Mike cursed at Susan, pushed her and threatened to kill her. Because the couple reconciled after this incident, it may not be used as a basis for the trial court's judgment of separation. However, this testimony regarding defendant's previous acts is material as corroboration of his subsequent action and to demonstrate a justification for plaintiff's fear for her personal safety.
Even a single act of cruelty can render living together insupportable. Simon v. Simon, 530 So.2d 669 (La.App. 4th Cir.1988). We think that the incident described by plaintiff in which defendant pulled plaintiff's hair and strangled her neck constituted cruel treatment by the defendant of such a nature as to render living together insupportable.
Defendant claims that plaintiff should be found guilty of abandonment. In order for a party to prevail on an allegation of abandonment, it must be shown the other party withdrew from the matrimonial domicile without lawful cause and has constantly refused to return. La.C.C. art. 143.[2]Smiley v. Smiley, 488 So.2d 1285 (La.App. 4th Cir.1986).
"Lawful cause" consists of any reasons which in themselves would be sufficient grounds for a legal separation. Blanchard v. Blanchard, 490 So.2d 361 (La.App. 1st Cir.1986). A single instance of cruel treatment by the other spouse may be sufficient to constitute lawful cause for leaving. Smiley v. Smiley, 488 So.2d at 1286.
*1145 It is undisputed that plaintiff withdrew from the matrimonial domicile on August 7, 1989. However, having found defendant guilty of cruel treatment, which is lawful cause for separation, we conclude plaintiff was justified in withdrawing from the matrimonial domicile.

CUSTODY
Defendant argues that the trial court erred in awarding sole custody of Andrew to plaintiff. Defendant argues that plaintiff has not presented sufficient evidence to rebut the presumption that joint custody is in the best interest of the child.
At the time this suit was filed, La.C.C. art. 146 A(1) and (2) provided as follows:
A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:
(1) To both parents jointly. The court shall, unless waived by the court for good cause shown, require the parents to submit a plan for implementation of the custody order.... A plan of implementation shall allocate the time periods each parent shall enjoy physical custody of the children and the legal authority, privileges and responsibilities of the parents....
(2) To either parent. In making an order for custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, and shall not prefer a parent as custodian because of that parent's sex or race. The burden of proof that joint custody would not be in a child's best interest shall be upon the parent requesting sole custody.
In the present case, both parties testified that they cannot communicate with each other. Plaintiff testified that she and Mike do not get along and she is scared of Mike. Defendant testified that he and his wife do not talk to each other. When the parties cannot communicate amicably, the courts have determined that joint custody is not in the child's best interest. Watermeier v. Watermeier, 504 So.2d 856 (La.1987); Draper v. Draper, 556 So.2d 210 (La.App. 2d Cir.1990). Since the record clearly shows that the parents cannot communicate, we find that plaintiff has met the burden of proof that joint custody would not be in Andrew's best interest.
After determining that joint custody was not in the child's best interest, the trial court was authorized to determine which parent should be awarded sole custody. The trial court's award of sole custody of Andrew to plaintiff is entitled to great weight and cannot be disturbed without a clear showing of abuse of discretion by the trial court. Draper, 556 So.2d at 212. Furthermore, we recognize that the trial judge is in a better position to evaluate the credibility of witnesses and the weight of evidence than an appellate court which does not hear or see the witnesses.
A review of the evidence establishes that Andrew has resided with his mother since his birth. At the time of trial, he was eight and one-half months old. The record further establishes that Susan was the primary care giver during the brief two month period during which the parents remained together after Andrew's birth. Susan testified that she fed, dressed, diapered and personally cared for Andrew with little or no assistance from defendant. Accordingly, we find no manifest error in the trial court's award of sole custody of Andrew to plaintiff.

CHILD SUPPORT
Appellant contends there is insufficient evidence in the record to support an award of child support in the amount of $250.00 per month. Appellant further argues that the trial court erred in failing to determine the child support award based on the guidelines set forth in La.R.S. 9:315 et seq.
La.R.S. 9:315.1 provides that the "guidelines set forth in this Part are to be used in any proceeding to establish or modify child support filed on or after October 1, 1989." *1146 In this case, plaintiff's original petition, which requested an award for child support, was filed prior to October 1, 1989. Thus, the provisions of La.R.S. 9:315 et seq. did not govern the trial court's determination regarding child support. A supplemental and amending petition was filed by plaintiff on October 12, 1989. Because this petition was filed after the effective date of La.R.S. 9:315 et seq., appellant argues that the statutory guidelines should apply. We disagree.
La.C.C.P. art. 1153 provides that amended petitions relate back to the date of filing of the original pleading. Thus, plaintiff's supplemental and amending petition relates back to the date on which the original petition was filed, which was before the effective date of La.R.S. 9:315 et seq. See Holland v. Holland, 539 So.2d 1011 (La.App. 4th Cir.1989).
Relevant to child support, La.C.C. art. 227 provides that the mother and father are responsible for the obligation of supporting their children. La.C.C. art. 231 provides "[a]limony shall be granted in proportion to the wants of the person requiring it, and the circumstances of those who are to pay it."
If finances permit, children are entitled to the same quality of life they enjoyed while they lived with both parents. Siciliani v. Siciliani, 552 So.2d 560 (La. App. 2d Cir.1989), writ denied, 556 So.2d 40 (La.1990). The obligation of support is not limited to monetary contributions but includes the day-to-day care of the children which the custodial parent provides. Id. In fixing the amount of child support, the trial court is vested with considerable discretion. Ducote v. Ducote, 339 So.2d 835 (La.1976).
The trial testimony established that Mr. Carroll was employed as a deputy sheriff. His gross pay for a two-week period was $447.32 and his net pay for this period was $372.10.
The child's expenses, listed in Mrs. Carroll's affidavit of income and monthly itemized expenses, totalled $488.90. Although one or two of these itemized expenses appeared to be exaggerated, for the most part, we find the expenses to be legitimate and reasonable. The greater part of the listed expenses was for food, clothes, diapers, laundry, daycare and medical expenses. These are the usual expenses that are associated with a small child. Considering Mr. Carroll's circumstances and the child's needs, we find the $250.00 per month award for child support is not manifestly erroneous.

ALIMONY PENDENTE LITE
Appellant argues that he lacks sufficient means to pay a $200.00 per month award of alimony pendente lite. He further claims that Mrs. Carroll has failed to establish any true need for alimony pendente lite because she is living at her parents' home with her expenses being paid by her parents.
At the time this suit was filed, La.C.C. art. 148 provided:
If the spouse has not a sufficient income for maintenance pending suit for separation from bed and board or for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse.
The purpose of this article is to provide temporarily for the spouse who does not have sufficient income for his or her maintenance and to preserve the spouse's standard of living comparable to that enjoyed prior to the separation. Jarman v. Jarman, 540 So.2d at 446, Velez v. Velez, 552 So.2d 1271 (La.App. 5th Cir.1989). In awarding alimony pendente lite, the court must determine the amount needed by the claimant spouse for maintenance and support during the pendency of the suit. If that amount is proportionate to the means of the other spouse, the amount should be awarded; if not, the court should fix an amount in proportion to the need and the means in such a way as to be fair to each party. Id.
At the time of trial and during most of the marriage, Mrs. Carroll was a full-time college student. Before and after the separation, Mrs. Carroll had worked only briefly. At the time of trial, she was *1147 not working and had no income. She and Andrew lived with her parents, who paid for all of her expenses. However, Mrs. Carroll testified that her parents were lending her these funds and she intended to fully reimburse them for these expenses. Mrs. Carroll's affidavit of expenses listed her expenses to be over $800.00 per month. Mrs. Carroll further claimed that during the marriage, she and Mike lived well, had plenty enough money to dine out regularly, to pay the bills and to purchase clothes. While Mr. Carroll's bi-weekly net income is $372.10, Mr. Carroll claims that his monthly expenses are $942.00 per month. He claims that his monthly income after the separation is drastically reduced from the monthly income he earned prior to the separation.
The record establishes that Mr. Carroll was fired from the job that he held prior to the parties' separation. Additionally, during most of the time that the parties were living together, they did not have the expenses associated with child-rearing; the parties remained together for only about two months after Andrew was born. Accordingly, Mrs. Carroll cannot expect to be maintained in the standard of living that she enjoyed prior to the time that Andrew was born. Considering Mr. Carroll's reduced income and his child support obligations, we find that the trial court erred in awarding $200.00 per month alimony pendente lite. We find an award of $100.00 per month in favor of Mrs. Carroll is more in proportion to her needs and Mr. Carroll's means.
For the reasons assigned, we reduce the trial court's award of alimony pendente lite to $100.00 per month. This sum is payable in semi-monthly installments due on the first and fifteenth days of each month. Otherwise, the judgment of the trial court is affirmed.
Each party is to pay one-half of the costs of this appeal.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] During trial, defense counsel objected to this particular testimony of Ms. Boudreaux, claiming it was hearsay. The trial court ruled that the testimony was hearsay but allowed the testimony into evidence, stating that it came in under an exception to the hearsay rule. We agree. La.C.E. art. 803 provides in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness: (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
We find that plaintiff's description of the July 17, 1988, fight to her mother was an excited utterance. Plaintiff described that Mike returned to the apartment with a gun and threatened to kill her. She left shortly thereafter and drove directly from her apartment in Hammond to her mother's house in Baton Rouge. Plaintiff's mother testified that plaintiff was very upset upon her arrival. While still under the stress of excitement caused by her husband's actions, she then recounted the incident to her mother.
[2] La.C.C. art. 143 was in effect at the time this suit was filed. This article was vacated by the amendment and re-enactment of Chapters 1 and 2 of Title V of Book I of the Civil Code, effective January 1, 1991.