626 So.2d 826 (1993)
Annette Murchie GUILLORY, Plaintiff-Appellee,
v.
Calvin J. GUILLORY, Defendant-Appellant.
No. 25188-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
*828 Blackwell, Chambliss, Hobbs & Henry by Sam O. Henry, III, for defendant-appellant.
Rankin, Yeldell, Herring & Katz by Alex W. Rankin and Phillip M. Lester, for plaintiff-appellee.
Before MARVIN, BROWN and STEWART, JJ.
MARVIN, Chief Judge.
In this divorce action the 77-year-old ex-husband appeals a judgment awarding his 68-year-old ex-wife $200 a month permanent alimony, contending that his ex-wife was not free of alimony-barring fault. Answering the appeal, the ex-wife seeks an increase in the monthly alimony award and an amendment to the judgment making the award retroactive to the date of her rule for alimony.
On this record we find no error or abuse of discretion in the trial court's factual conclusions (fault and amount of alimony).
We amend to make the award retroactive to the date of judicial demand, and as amended, we affirm the judgment.

FACTS
Annette and Calvin Guillory, ages 68 and 77 respectively at the time of trial in 1992, who had earlier married others and had grown children, married July 9, 1980. Before they became estranged, they enjoyed many social activities together, including dining and dancing.
The Guillorys last lived under the same roof in Mrs. Guillory's separately owned home on January 13, 1992, when they physically separated after she asked Mr. Guillory to move from her home in late 1991. Earlier she began sleeping in a separate bedroom. Mrs. Guillory was awarded temporary alimony *829 in April on her petition for divorce, which also demanded permanent alimony, that was filed January 27, 1992.
Mr. Guillory's rule for divorce and to terminate alimony, was filed August 6, 1992. On August 27, 1992, the court rendered the judgment of divorce, and Mrs. Guillory filed her rule for permanent alimony.
The court found the husband's claim of forced or constructive abandonment had not been proved because he had not shown that he attempted or requested to return to the matrimonial domicile. Nevertheless, the court concluded:
[T]he actions of Mrs. Guillory in asking her husband to remove himself from her home in December 1991 was a reasonably justifiable response [on] the part of Mrs. Guillory to the abusive, boorish and unpleasant conduct of Mr. Guillory, which had prompted Mrs. Guillory to believe that she had done as much as she could to keep the marriage together.
The court also found the husband's accusations of the wife's cruelty were not proved by a preponderance of the evidence, concluding that the wife was free from fault and entitled to permanent alimony.

ALIMONY-BARRING FAULT
Mr. Guillory contends here that his wife constructively abandoned him and cruelly treated him so as to be legally at fault.
CC Art. 112A(1) states in part:
When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income. Emphasis added.
"Fault" contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties or responsibilities. Pearce v. Pearce, 348 So.2d 75 (La.1977); Mathews v. Mathews, 614 So.2d 1287 (La.App. 2d Cir.1993); Currier v. Currier, 599 So.2d 456 (La.App. 2d Cir.1992); Taylor v. Taylor, 579 So.2d 1142 (La.App. 2d Cir.1991).
The 1990 marriage dissolution revisions which included the repeal of CC Art. 138 (grounds for separation from bed and board), renumbered, but did not alter the post-divorce alimony provisions. Mathews, Currier, and Taylor, cited supra. A spouse's obligations or marital duties and responsibilities of fidelity, support, and assistance have remained the same irrespective of the codal revisions. Currier, supra.
"Fault" for purposes of alimony preclusion continues to include the grounds enumerated in former CC Art. 138 (adultery; conviction of a felony; habitual intemperance or excesses, cruel treatment, or outrages; public defamation; abandonment; an attempt on the other's life; status as a fugitive; and intentional non-support), and is not limited to the fault grounds currently listed in CC Art. 103 (adultery or a felony conviction). See Mathews, supra; Wicker v. Wicker, 597 So.2d 1273 (La.App. 3d Cir.1992). Compare Gitschlag v. Gitschlag, 593 So.2d 1331 (La.App. 1st Cir. 1991).
A spouse seeking permanent alimony has the burden of proving that he or she is without fault. Taylor, supra; Green v. Green, 567 So.2d 139 (La.App. 2d Cir.1990). A spouse is not deprived of permanent alimony simply because he or she was not totally blameless in the marital discord. Pearce, Currier, and Taylor, cited supra; Wynn v. Wynn, 513 So.2d 489 (La.App. 2d Cir.1987). A spouse also is not deprived of alimony when his or her actions amount to a reasonable, justifiable response to the other spouse's provocative acts. Currier, Taylor, and Wynn, cited supra.
Because domestic relations issues largely turn on evaluations of witness credibility, much discretion of the trier of fact is recognized and given deference by the appellate courts. Pearce and Taylor, cited supra. Fault is a factual finding which will not be disturbed on appeal unless manifestly erroneous. Pearce, Currier, and Taylor, cited supra; Blake v. Blake, 478 So.2d 617 (La. App. 2d Cir.1985).

*830 Abandonment:

The elements necessary to prove abandonment are provided in former CC Art. 143:
1. the party has withdrawn from the common dwelling; and
2. the party left without lawful cause; and
3. the party has constantly refused to return to live with the other.

Blake, supra.
One spouse is not expected to seek reconciliation in the face of adverse conditions which manifest that the other spouse has no desire or intent to reconcile. Schirrmann v. Schirrmann, 436 So.2d 1340 (La.App. 5th Cir.1983), writs denied.
"Constructive abandonment" occurs when one spouse, without lawful cause, orders the other to leave the matrimonial domicile or prevents or bars the other from entering the domicile. Quinn v. Quinn, 412 So.2d 649 (La.App. 2d Cir.1982), writs denied; Schirrmann, supra.
Lawful cause which justifies abandonment or constructive abandonment is the equivalent to cause giving the withdrawing spouse grounds for a separation under former CC Art. 138. Quinn and Blake, cited supra. Mere friction or dissatisfaction in the relationship or incompatibility between the spouses, however intense, has been said to be not enough to constitute lawful cause. Quinn and Blake, cited supra.
The trial court found the claim of forced or constructive abandonment had not been proved because the husband did not attempt or request to return to the matrimonial domicile, further concluding any forced or constructive abandonment was a reasonable and justifiable response to Mr. Guillory's conduct.
The husband argues that it would have been useless for him to attempt or request to reconcile because his wife had demanded that he leave on three different occasions, stating that she did not want him back in her home. She filed for divorce just two weeks after they separated. He correctly contends that constructive abandonment may occur where an attempt or request to return to the matrimonial domicile by the abandoned party would be futile or useless. We reiterate that a wife's actions may negate any desire to reconcile with her husband.
The husband also urges that the trial court erred in finding lawful cause for the wife's forcing him from the marital domicile. He argues that his racist views and his wife's high blood pressure pre-existed their 1980 marriage, and that there is no evidence to support his wife's contentions that he was loud or abusive toward her, or that he was an unsafe driver. We do not agree the trial court was clearly wrong in its finding that Mrs. Guillory's asking her husband to leave was an unjustified response to Mr. Guillory's conduct.
Mrs. Guillory testified that Mr. Guillory often used foul language and screamed at her. Mr. Weatherly, one of his golfing partners, testified that the husband lost his temper with himself and used profanity many times on the golf course. He told of a dispute on the golf course provoked by Mr. Guillory. Mr. Harrelson, another golfing partner, stated that he had a problem with the husband's violent temper and profane language on the golf course. On one occasion, Harrelson asked Mrs. Guillory to talk to her husband about controlling his temper and language. Harrelson, Weatherly and others eventually ceased playing golf with Mr. Guillory because of his verbal outbursts.
Mrs. Guillory told of Mr. Guillory's insistence of him always driving (because he was the man of the family) and of her eventual refusal to sit in the front seat because of Mr. Guillory's erratic and unsafe driving habits. She explained that because he insisted on his [unsafe] driving, she refused to attend certain functions with him, including a wedding reception and a New Year's Eve party in December 1991. She said she would have gone anywhere with him if he would have allowed her to drive. He candidly declared his fixed belief that it is the man's responsibility to drive the wife. Mrs. Blanks, a mutual friend, corroborated Mrs. Guillory's testimony about Mr. Guillory's driving habits.
The wife explained her disagreements with her husband's racist attitude and repeated *831 remarks, saying she was constantly embarrassed thereby. Mr. Weatherly testified that Mr. Guillory became very vocal when anyone mentioned black civil rights activists during political discussions at the country club. The husband's son-in-law, a witness for Mr. Guillory, acknowledged that Mr. Guillory did not care for black people. Mr. Guillory stated, "I come from the old school. I don't socialize with [black people]."
Mrs. Guillory explained that her reason for moving to a separate bedroom was that her husband's tossing and turning interfered with her sleep, testifying that Mr. Guillory had said that he did not blame her for sleeping in another bedroom.
Mrs. Guillory testified that the husband's behavior caused her blood pressure to rise and caused her to not feel well. Her doctor testified about the wife's high blood pressure. He concluded that stress, possibly caused by marital disputes, was the predominant factor in the wife's increased blood pressure between August 1991 and February 1992.
Finding that Mrs. Guillory's asking her husband to leave was justifiable, the trial court stated that the credibility determinations militated in favor of the wife. We cannot find that the trial court was manifestly erroneous or clearly wrong in so finding.

Cruel treatment:
In determining if one spouse was guilty of cruel treatment, the trial court must first decide:
1. Did the factual conduct, alleged to be cruel, actually occur?
2. Did that conduct render the parties' living together insupportable?
Dean v. Dean, 579 So.2d 1124 (La.App. 2d Cir.1991), writ denied; Carroll v. Carroll, 577 So.2d 1140 (La.App. 1st Cir.1991).
Spousal fussing and bickering ordinarily do not support a finding of cruel treatment. When the degree of spousal fussing and bickering, however, allows the finding of a pattern of harassment, upbraiding, nagging and griping, a determination by the trial court of cruel treatment has been found supported by the record. Each case must rest on its own facts. Taylor and Dean, cited supra.
The trial court found that the wife's actions that were complained of by the husband, particularly, her requests that he leave the matrimonial domicile, her move from the couple's bedroom in 1987, her refusal to sit in the front seat when he drove, and her refusal to attend certain social functions with him, did not reach the level of cruel treatment. The court found, at most, that the wife's actions and conduct were only fussing and bickering. Moreover, as we have discussed, the court found the wife's conduct was a reasonably justifiable response to the husband's conduct. Therefore, we cannot find that the trial court erred by not finding Mrs. Guillory at fault, entitled to permanent alimony.

AMOUNT OF ALIMONY
Permanent alimony is not determined by the guidelines for alimony pendente lite. The initial fixing of permanent alimony after divorce is a new award, requiring a new evaluation. McDonald v. McDonald, 516 So.2d 1306 (La.App. 2d Cir.1987).
CC Art. 112A(2) states:
In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
The lifestyle of the parties during their marriage is a relevant factor in determining what is necessary for support of the party requesting alimony. Gottsegen v. Gottsegen, *832 503 So.2d 588 (La.App. 4th Cir.1987), writ denied.
The claimant spouse has the burden of proving necessitous circumstances. Green, supra; Siciliani v. Siciliani, 552 So.2d 560 (La.App. 2d Cir.1989), writ denied. The purpose of permanent alimony is to provide a spouse in need with sufficient means for support. Green, supra; Rhinehart v. Rhinehart, 475 So.2d 43 (La.App. 2d Cir. 1985), writ denied.
The spouse is entitled to expenses for food, clothing, and shelter, as well as reasonable and necessary expenses for transportation, medical care and drugs, utilities and household maintenance and income tax liability arising from the alimony payments. Green and Rhinehart, cited supra. Permanent alimony has not been interpreted to include expenditures for newspapers, gifts, recreation, vacation and church tithes. Shenk v. Shenk, 563 So.2d 1000 (La.App. 4th Cir.1990).
The trial court is vested with much discretion in fixing alimony awards, and its rulings will not be disturbed absent a manifest abuse of discretion. Siciliani, supra; Gray v. Gray, 451 So.2d 579 (La.App. 2d Cir.1984), writ denied.
The parties stipulated that their expenses had not changed since the hearing to determine alimony pendente lite. Before this hearing each spouse submitted a statement of his or her monthly income and expenses. The husband claimed that his monthly income was $2,430 and his monthly expenses were $2,255. Mrs. Guillory claimed that her monthly income was $600, and her monthly expenses were $2,131.
Mrs. Guillory disputes the figures submitted by the husband for his monthly income and expenses. She contends the husband's income is approximately $2,700 per month, and his expenses are only about $1,800 per month. Arguing that Mr. Guillory's income far exceeds his expenses and that the trial court set alimony pendente lite at $750 per month, Mrs. Guillory contends the trial court erred in awarding her only $200 per month for alimony.
Mrs. Guillory seeks an alimony award of $500 or $600 per month. She argues that the lifestyle of the parties during the marriage is relevant in determining permanent alimony, and that she was accustomed to a higher lifestyle than she will now be able to enjoy because of her limited income, age and earning capacity.
The trial court found the wife's income to be $600 per month, her expenses to be $800 per month, and the husband's income to be $2,400 per month, and his expenses to be $2,200 per month. The trial court obviously accepted the figures submitted by the husband.
The trial court stated:
The Court has reviewed the itemized list of expenses submitted by Annette Guillory at the April 1992 hearing wherein alimony pendente lite was set. The Court considers that Mrs. Guillory has valid, proven, legitimate, necessary and reasonable expenses for food, clothing and shoes, utilities, medical and drug items, transportation expenses and household supplies totalling approximately $800 per month. No testimony was adduced at either hearing to show what, if any, income tax liability would be generated by the receipt of alimony by Mrs. Guillory. Therefore, no consideration has been given by the Court to this item.
The Reasons for Judgment do not specifically explain how the wife's expenses were determined to be $800 per month. The record does not include a transcript of the hearing to determine alimony pendente lite. We cannot conclude that the trial court was clearly wrong in its determination of alimony on this record.

RETROACTIVITY OF ALIMONY
LRS 9:310 states in part:
A. An order for child support or alimony shall be retroactive to the filing date of the petition for child support or alimony granted in the order.
. . . . .
C. In the event the court finds good cause for not making the award retroactive, *833 the court may fix the date such award shall become due.
It is mandatory that an award for alimony be retroactive to the date of filing the rule unless the court finds good cause for not making the award retroactive. Miller v. Miller, 610 So.2d 183 (La.App. 3d Cir.1992). The burden is not on the claimant spouse to demonstrate good cause for making the award retroactive, but on the other spouse to show good cause for not making the award retroactive. Broussard v. Broussard, 532 So.2d 281 (La.App. 3d Cir.1988).
The trial court's November 17, 1992, judgment makes the alimony award effective November 10, 1992. The court's Reasons for Judgment do not explain why the award was not made retroactive. Mrs. Guillory correctly argues that Mr. Guillory has not shown, on this record, "good cause" for not making the alimony retroactive to August 27, 1992, the date she filed her rule.
We find no evidence in the record which would demonstrate good cause for not making the award retroactive. Mrs. Guillory filed for divorce two weeks after the parties separated, seeking temporary and permanent alimony. Shortly after the six-month period of living separate and apart, Mr. Guillory filed his rule for divorce. A hearing on the rule was held two and one-half months later, and the trial court's judgment was rendered less than a month after the hearing. Compare Watson v. Hampton, 569 So.2d 635 (La.App. 2d Cir.1990).
The trial court judgment should have made the alimony award retroactive to the filing date of the petition, August 27, 1992. See Hogan v. Hogan, 549 So.2d 267 (La.1989). We shall amend the judgment in this respect.

DECREE
The judgment is amended to make the monthly alimony payable from August 27, 1992. As amended, the judgment is AFFIRMED.