NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1555


TERESA FOSTER, BORN MCDONALD

VERSUS

CRAIG FOSTER


************

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT,
PARISH OF BEAUREGARD, NO. 2005-1036,
HONORABLE HERMAN I. STEWART, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Sylvia R. Cooks, John D. Saunders, and Michael G. Sullivan, Judges.


AFFIRMED.


Martha Ann O'Neal
O'Neal & Leavoy
Post Office Box 1055
DeRidder, Louisiana 70634
(337) 462-6051
Counsel for Plaintiff/Appellee:
 Teresa McDonald Foster

David L. Wallace
Attorney at Law
Post Office Box 489
DeRidder, Louisiana 70634
(337) 462-0473
Counsel for Defendant/Appellant:
 Craig Foster

SULLIVAN, Judge.

Craig Foster appeals a judgment declaring his spouse, Teresa McDonald Foster, to be free from fault in the breakup of their marriage, thereby allowing her to pursue her claim for permanent spousal support in their divorce proceedings. For the following reasons, we affirm.

**Discussion of the Record**

Craig and Teresa were married on July 3, 1981 in Beauregard Parish, Louisiana. Two children were born of the marriage, and Teresa had one child from a previous relationship before they were married. Because Craig was on active duty in the military, the family lived in many different places, but they returned to Beauregard Parish after Craig retired from the military in 1999. On November 8, 2005, while Craig was working as a private contractor in Afghanistan, Teresa filed for divorce, alleging that the parties had separated on October 19, 2005. In her petition, Teresa sought interim support, permanent support, and joint custody of their one child who was still a minor, with Teresa to be named as domiciliary parent.

On March 13, 2006, at a hearing to determine fault, Teresa testified that, early in their marriage, rumors surfaced that Craig had fathered a child with another woman as the result of a one-time sexual encounter that occurred while he and Teresa were engaged. According to Teresa, Craig continually denied the rumors over the years, and they had both undergone counseling to deal with the problems that those allegations had caused. Teresa explained that the mother of the child had filed proceedings with social services in which she named Craig and four other men as the possible father of the child and that the woman often contacted her mother, seeking information about how to get in touch with Craig. Teresa testified that, in February of 2005, she asked that Craig submit to DNA testing, hoping that it would put an end

to the controversy and would get the child's mother to stop contacting her family. The results of the DNA test, however, indicated a 99.99996% probability that Craig was the father of the child, who was twenty-five years old at that time. Teresa testified that she could no longer trust him after he had lied to her for so many years, so she asked for a divorce in October of 2005.

Craig testified that he did not learn about this child until 1995, when he received a telephone call from social services about child support. He testified that he never believed he was the child's father because he did not have an independent recollection of the alleged encounter with the child's mother. He stated that he only remembered drinking with his friends and then waking up the next morning in the army barracks. He also testified that the child's mother's allegations did not come up on a regular basis in his marriage and that, although he went to counseling with his wife, he did not recall if this occurred before 1995, when he first found out about the child.

Lyness Lacy, Teresa's mother, testified that, for over twenty years, she was aware of rumors that Craig had fathered this child and that she hoped the DNA test would finally put an end to the matter. After the test came back positive, Ms. Lacy recalled Teresa stating that she did not know if she could still live with Craig after he had been lying to her all those years. Ms. Lacy testified that many times since 1981 she discussed the matter with Craig in the presence of other family members. She also recounted an incident that occurred in 1981, at a going-away party for Craig and Teresa at their church shortly before they left for Germany, when Craig referred to the child as "my boy" after his mother placed him in Craig's arms while he was also holding Teresa's daughter. Testifying on rebuttal, Craig stated that he recalled

2

picking up the child at the going-away party, but that he that he did not refer to the child as his son.

Ruling from the bench, the trial court stated that it could not find Teresa to be at fault for ending the marriage, based upon its finding that Craig did lie to her about not knowing of the child. The trial court specifically found that the matter had been discussed in the family for at least fourteen years, which was well before 1995, when Craig claimed to first hear about this. The trial court also noted that Craig's decision to continue working overseas after his retirement from the military was not a joint one and that fact also contributed to the destruction of the marriage.

**Opinion**

In *Walker v. Walker*, 41,573, pp. 2-3 (La.App. 2 Cir. 11/1/06), 942 So.2d 605, 608 (citations omitted) (emphasis added), the court explained:

> Fault is a threshold issue in a claim for spousal support. In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of the party and the ability of the other party to pay. *A spouse who petitions for permanent support need not be totally blameless. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault.* Legal fault includes, but is not limited to, habitual intemperance or excesses, cruel treatment or outrages, and abandonment.

> *The trial court has immense discretion in matters regarding determination of fault for purposes of precluding final periodic support.* The trial court's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous. Even in situations where an appellate court feels its own evaluations are more reasonable than the factfinder's, reasonable evaluations of credibility should not be disturbed where conflict exists in testimony.

The elements of abandonment are that one party has withdrawn from the common dwelling without lawful cause and has constantly refused to return. *Guillory*

3

*v. Guillory*, 626 So.2d 826 (La.App. 2 Cir. 1993). "'Constructive abandonment' occurs when one spouse, without lawful cause, orders the other to leave the matrimonial domicile or prevents or bars the other from entering the domicile." *Id.* at 830. The court in *Guillory*, 626 So.2d 826, further explained:

> Lawful cause which justifies abandonment or constructive abandonment is the equivalent to cause giving the withdrawing spouse grounds for a separation under former CC Art. 138. *Quinn* [*v. Quinn*, 412 So.2d 649 (La.App. 2 Cir.), *writs denied*, 415 So.2d 941, 945 (La.1982)] and *Blake* [v. *Blake*, 478 So.2d 617 (La.App. 2 Cir.1985)]. *Mere friction or dissatisfaction in the relationship or incompatibility between the spouses, however intense, has been said to be not enough to constitute lawful cause. Quinn* and *Blake*, cited supra.

*Id.* at 830 (emphasis added).

In his brief, Craig argues that Teresa's decision to end the marriage was unjustified because it was based upon conduct that occurred before the marriage. From our reading of the trial court's ruling, however, it is evident that the trial court found Teresa's actions were justified by Craig's ongoing deception throughout the marriage, which was finally revealed through the DNA testing, rather than the fact that Craig fathered a child before the marriage. In reaching this conclusion, the trial court also made a factual finding that Craig was not being truthful when he denied knowing about the child before receiving the letter from social services.

After reviewing the record, we cannot conclude that the trial court abused its discretion in either its factual findings or legal conclusions. As Teresa testified: "He denied it all these years. He kept denying it. . . . I went through hell with him for the last 25 years. Because this was brought up in our marriage many a times. There was a lot of fights, physical abuse over this matter." Ms. Lacy also testified that "over a period of 20-some-odd years, we had been involved knowing that there was this rumor going around at church and everywhere else in the community that he was the

4

father of this child," but that "[h]e has always denied it." When asked if Teresa ever confided her intentions after the DNA test established Craig's paternity of the child, Ms. Lacy stated: "It was brought up that she didn't know that she could go ahead and live with him like that, him lying to her all these years and then lying to the last minute that he wasn't the father of it and then had the DNA test. It was really, really bad for her. She—It's a wonder she didn't have a nervous breakdown over it." From a review of the record, it seems clear that the breakup of this marriage was not caused by mere friction or incompatibility, but rather from the exposure of an ongoing deception that persisted throughout the marriage. Under these circumstances, we find no error in the trial court's decision to hold Teresa free from fault.

## Decree

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Appellant, Craig Foster.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal. Rule 2-16.3.